IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| BRENDA ROBINSON, | } | |
| | } | |
| Plaintiff, | } | |
| | } | CIVIL ACTION NO. |
| v. | } | 06-AR-2274-S |
| | } | |
| TYSON FOODS, INC., | } | |
| | } | |
| Defendant. | } | |

### MEMORANDUM OPINION

Before the court is the motion of defendant, Tyson Foods, Inc. ("Tyson"), for summary judgment. As explained more fully herein-below, Tyson's motion will be granted on the basis of the prior bankruptcy petition of plaintiff, Brenda Robinson ("Robinson"). Also before the court are motions to strike that both Tyson and Robinson have filed. Because none of the proffered evidentiary material contested in those motions are necessary to the court's ruling on the motion for summary judgment, those motions will be declared moot. Additionally, the motion of Tyson for leave to file excess pages will be granted.

### FACTS[1]

This is a constructive discharge case. Robinson resigned her employment with Tyson, alleging that her mistreatment based on her race was so severe as to have amounted to involuntary termination. This court would grant summary judgment for Tyson on the undisputed

---

[1]    In accordance with Fed. R. Civ. P. 56©, the narrative statement of facts include facts that are undisputed by the parties, and where there is a dispute, the facts are presented in the light most favorable to Robinson, the non-moving party.

facts relevant to constructive discharge were it not for a dispositive threshold issue. The court's recitation of the facts will be limited to those relevant to the bankruptcy issue. On April 3, 2002, Robinson filed for Chapter 13 bankruptcy in the bankruptcy court of the Northern District of Alabama. On May 29, 2002, the bankruptcy judge entered a confirmation order, which stated, in part, "(4) The property of the estate shall not vest in the Debtor until a discharge is granted under § 1328 or the case is dismissed."

Robinson resigned from her employment with Tyson on September 21, 2005. She filed her complaint in this court on October 30, 2006. On May 7, 2007, Robinson's bankruptcy trustee moved for a dismissal of the case because Robinson's payments were not current, according to the plan enumerated in the confirmation order. However, on July 9, 2007, Robinson completed her bankruptcy plan and received her discharge from bankruptcy on July 11, 2007.

## DISCUSSION

The first argument in Tyson's brief is that it is entitled to summary judgment, regardless of the viability of Robinson's race discrimination and retaliation claims, because she is barred by judicial estoppel. Professor Moore's treatise defines judicial estoppel as "prevent[ing] a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." 18 Moore's Federal Practice § 134.30 (3d

ed. 2008), *cited in New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S.Ct. 1808, 1814 (2001). In *New Hampshire*, the Supreme Court declared that the purpose of the doctrine is "to protect the integrity of the judicial process by prohibiting parties from changing positions according to the exigencies of the moment." *Id.* (internal punctuation omitted). The Court also noted that whether judicial estoppel can be invoked is a matter within the court's discretion and that the court may refrain from applying it when a party has inadvertently or mistakenly taken inconsistent positions. *Id.* at 750-51, 1815-16; *see also Ajaka v. Brooksamerica Mortgage Corp.*, 453 F.3d 1339, 1343-44 (11th Cir. 2006).

The seminal case in the Eleventh Circuit on the theory of judicial estoppel is a partial affirmance of one of this court's opinions, *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282 (11th Cir. 2002). In *Burnes*, thirty-six individuals filed a discrimination action against their employer, Pemco, seeking monetary and injunctive relief. 291 F.3d at 1284. One of the plaintiffs, Levi Billups ("Billups"), had filed for Chapter 13 relief approximately six months before he filed his EEOC charge and approximately seventeen months before the Pemco suit was instituted. *Id.* After Billups joined in filing the complaint against Pemco, he failed to amend his schedule of assets or statement of financial affairs in his bankruptcy case to reflect this claim. *Id.* Approximately eleven months after the suit against Pemco was filed, Billups

3

requested that his Chapter 13 bankruptcy proceeding be converted to a Chapter 7 proceeding, and as a result, he later received a complete, "no asset" discharge of his debts. *Id.* In having his bankruptcy case converted, Billups submitted amended asset schedules that he certified were true and accurate. *Id.* Billups made no effort at any point in his bankruptcy proceedings to amend his filings to reflect his suit against Pemco as an asset. *Id.*

In ruling on Pemco's motion for summary judgment, this court applied the principle of judicial estoppel and granted summary judgment for Pemco. *Id.* The Eleventh Circuit affirmed the summary judgment as to Billups's claims for monetary relief and in doing so, outlined the two factors necessary for establishing the bar of judicial estoppel: "First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding. Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system." *Id.* at 1285 (*quoting Salomon Smith Barney, Inc. v. Harvey, M.D.*, 260 F.3d 1302, 1308 (11th Cir. 2001)). The Eleventh Circuit found that only the second element of judicial estoppel was a matter for debate because Billups's financial disclosure forms were submitted under oath to the bankruptcy court and were not amended to reflect his claim against Pemco. *Burnes*, 291 F.3d at 1286.

In determining whether Billups's intent implicated judicial estoppel, the Eleventh Circuit noted that debtors in bankruptcy

4

court are under a continuing duty to disclose all assets, even
potential ones in the form of a lawsuit, to the court and that this
duty mandates amendment of asset schedules if a debtor's financial
circumstances change during the pendency of the bankruptcy suit.
*Id.* The Eleventh Circuit emphasized the importance of full and
honest disclosure in bankruptcy, stating that it is "crucial" to
the system's "effective functioning." *Id.* (*quoting Ryan Operations
G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir.
1996)). While an estopped party's contradictions must be
intentional to meet the second element, such intent may be inferred
from the record, and inadvertence may only prevent the application
of judicial estoppel when "the debtor either lacks knowledge of the
undisclosed claims [in the bankruptcy court] or has no motive for
their concealment." *Id.* at 1287 (*quoting In re Coastal Plains*, 179
F.3d 197, 210 (5th Cir. 1999)).

In *Burnes*, the court found that Billups clearly knew that he
had a potential claim against Pemco during the pendency of his
bankruptcy case and that he would gain an advantage by not
revealing this claim to the bankruptcy court (most likely because
his conversion to Chapter 7 would not have been possible with the
disclosure of this claim as an asset). *Burnes*, 291 F.3d at 1288.
As a result, the Eleventh Circuit found that Billups possessed the
requisite intent for the application of judicial estoppel and
affirmed this court's grant of summary judgment for Pemco on

Billups's claim for money damages.  *Id.*

Although the facts in *Burnes* are more egregious than the facts at issue here, the fact situation is quite similar, and the principle of judicial estoppel applies.  Here, Robinson filed for Chapter 13 bankruptcy on April 3, 2002.  Robinson was under a duty to amend asset schedules submitted to the bankruptcy court to reflect any changes in the composition of the debtor's assets that was outlined in *Burnes*.  *Id.* at 1286.  *See also Ajaka*, 453 F.3d at 1339.  Robinson did not amend her schedules to reflect her pending claim against Tyson when she left her employment, nor when she actually filed her complaint in this court, both of which events occurred *before* her bankruptcy proceeding was discharged.  As in *Burnes*, it is undisputed that Robinson was aware of a newly-acquired asset in the form of her claim against Tyson during the pendency of her bankruptcy proceeding.  Thus, as was the case in *Burnes*, the issue becomes whether Robinson possessed the requisite intent to give rise to judicial estoppel.

In *Barger v. City of Cartersville*, 348 F.3d 1289, 1291 (11th Cir. 2003), the plaintiff, Barger, filed an employment discrimination suit in federal court and subsequently filed for Chapter 7 bankruptcy.  Barger did not list her pending suit against her employer as an asset in her bankruptcy proceeding and obtained a complete discharge of her debts while her discrimination suit was still pending without ever having revealed its existence to the

bankruptcy court. *Id.* After the existence of her claim was revealed, the bankruptcy court found that her concealment of it was inadvertent and that it did not affect her bankruptcy petition. *Id.* at 1292. In contrast, the Eleventh Circuit, in reviewing that finding, concluded that Barger's actions were deliberate and affirmed the district court's decision to bar Barger's discrimination claims based on judicial estoppel. *Id.* at 1296-97.

Although it is arguable that Barger's actions were more egregious than Robinson's because she filled out her asset schedules in bankruptcy court when her discrimination case was already pending, the Eleventh Circuit's pronouncements regarding Barger's intent are instructive:

> Barger appeared to gain an advantage when she failed to list her discrimination claims on her schedule of assets. Omitting [them]... appeared to benefit her because, by omitting the claims, she could keep any proceeds for herself and not have them become part of the bankruptcy estate. Thus, Barger's knowledge of her discrimination claims and motive to conceal them are sufficient evidence from which to infer her intentional manipulation.

*Id.* at 1296. Here, Robinson had a motive to keep her discrimination claim from becoming a part of her bankruptcy estate. If she realized any proceeds from the suit prior to the discharge of her bankruptcy, like Barger, she could have kept the proceeds for herself without their becoming a part of the bankruptcy estate and going to her creditors to satisfy her debts. *See DeLeon v. Comcar Indus., Inc.*, 321 F.3d 1289, 1291 (11th Cir. 2003) ("[A] financial motive to secret assets exists under Chapter

13... because the hiding of assets affects the amount to be discounted and repaid"). Even though Robinson did not recover any money from Tyson before her discharge in the bankruptcy proceeding, and therefore did not cause actual prejudice to her creditors or to Tyson, that fact is of no import in the judicial estoppel inquiry. *See Burnes*, 291 F.3d at 1286 ("[C]ourts have concluded that since [judicial estoppel] is intended to protect the judicial system, those asserting [it] need not demonstrate individual prejudice.").

Robinson clearly had knowledge of her discrimination claim against Tyson during the pendency of her bankruptcy proceeding and had a motivation to refrain from including it on her schedule of assets. Thus, Robinson's failure to list her claim against Tyson as an asset was not a simple mistake or an inadvertent omission. *See Barger*, 348 F.3d at 1295-96 ("[I]n considering judicial estoppel for bankruptcy cases, the debtor's failure to satisfy its statutory disclosure duty is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment" (*quoting Coastal Plains*, 179 F.3d at 210)). The court can infer from the record that Robinson possessed the requisite intent for the application of judicial estoppel. *See DeLeon*, 321 F.3d at 1292 ("Because DeLeon certainly knew about his claim and possessed a motive to conceal it... we can infer from the record his intent to make a mockery of the

judicial system.") (internal citations and punctuation omitted). As a result, Eleventh Circuit precedent calls upon this court to exercise its discretion to decide whether judicial estoppel bars Robinson.  *See id.* at 1291 ("[J]udicial estoppel bars a plaintiff from asserting claims previously undisclosed to the bankruptcy court where the plaintiff both knew about the undisclosed claims and had a motive to conceal them from the bankruptcy court").

Robinson argues that the principle of judicial estoppel is not applicable because of the Eleventh Circuit's opinion in *Telfair v. First Union Mortgage Corporation*, 216 F.3d 1333 (11th Cir. 2000).  However, the court in *Telfair* addressed a conflict in bankruptcy law that is not applicable here due to the plain language of the relevant statute and of the confirmation order in Robinson's bankruptcy case.  In *Telfair*, the Eleventh Circuit found that a debtor retained possession and control over assets acquired post-confirmation that were not necessary for the fulfillment of the confirmation plan because once a bankruptcy plan is confirmed all after-acquired assets vest in the debtor rather than in the bankruptcy estate.  *Id.* at 1340.  The *Telfair* court reached this conclusion in resolving a conflict between two bankruptcy statutes.  The first, 11 U.S.C. § 1306(a), states that all assets the debtor acquires after institution of the bankruptcy suit that would have been a part of the bankruptcy estate if the debtor had owned them at the time the suit was filed vest in and

9

are a part of the bankruptcy estate until the bankruptcy is closed, dismissed or converted.  In seeming contrast, 11 U.S.C. § 1327(b) reads, "[e]xcept as otherwise provided in the plan, the confirmation of the plan vests all the property of the estate in the debtor."  In *Telfair*, the court found that property that the debtor acquired after the confirmation of his bankruptcy plan, and that was not necessary to the fulfillment of the plan, vested in debtor. *Id.*  Robinson argues that because her bankruptcy plan was confirmed on April 3, 2002 and she did not file this suit until October 30, 2006, any asset that this claim against Tyson may represent vested in her and not in her bankruptcy estate, and as a result, she had no duty to amend her asset schedules in her bankruptcy case.  This court, and probably Robinson's creditors, respectfully disagree.

In relying on *Telfair*, Robinson ignores the plain language of § 1327(b) and of her confirmation order in her bankruptcy case. 11 U.S.C. § 1327(b) clearly states that assets acquired post-confirmation vest in the debtor, **"except as otherwise provided in... the order confirming the plan."** (emphasis added). Robinson's confirmation order clearly states, "[t]he property of the estate **shall not vest in the Debtor** until a discharge is granted... or the case is dismissed." (emphasis added).  Because Robinson's confirmation order contains a provision that is inapposite to the language of § 1372(b), thereby eliminating the

conflict between § 1306 and § 1327, it is unnecessary to apply *Telfair* here.   Thus, all of Robinson's assets qualifying as bankruptcy estate property, regardless of when acquired, vested in her bankruptcy estate and remained estate property until she was discharged on July 11, 2007.  As a result, when Robinson filed her claim against Tyson and it became an asset on October 30, 2006, the claim vested in the bankruptcy estate.   She should have amended her asset schedules in her bankruptcy suit to reflect this new asset.  She did not.  *See Burnes*, 291 F.3d at 1286.

   This court's reading of *Telfair* and the relevant bankruptcy statues has been applied in the bankruptcy courts of the Eleventh Circuit.   In *In re Moore*, 312 B.R. 902, 908 (Bankr. N.D. Ala. 2004), the court found that the explicit language of the confirmation order applied rather than the contrasting language of 11 U.S.C. § 1327(b):

> The Debtor's Chapter 13 plan was confirmed by order...
> [stating] "(5) The property of the estate shall not vest
> in the debtor(s) until a discharge is granted under §
> 1328 or the case is dismissed"... Because the
> confirmation order "otherwise provide[s]", the latter
> half of § 1327(b) is negated.  When the language of the
> confirmation order clearly states when property of the
> estate vests in the debtor, there is no conflict between
> § 1327 and § 1306... This language distinguishes the
> facts of this case from those in *Telfair*.  The analysis
> of *Telfair* is, therefore, not applicable in this case.

Other bankruptcy decisions have followed this analysis. *See  In re Coleman*, No. 01-70473, 2007 WL 1526651 (Bankr. N.D. Ala. May 24, 2007); *see also In re Harvey*, 356 B.R. 557, 563-66 (Bankr. S.D. Ga.

2006) (refusing to apply *Telfair* to post-confirmation assets and concluding that assets acquired by debtor after confirmation of the bankruptcy plan vest in the bankruptcy estate rather than in debtor, even though assets acquired prior to confirmation re-vest in debtor at confirmation). The language in the confirmation plan in *Moore* is identical to the language in the confirmation plan here. Thus, because Robinson's confirmation plan "otherwise provided" that her assets vested in the bankruptcy estate until her bankruptcy was discharged, *Telfair* is inapplicable here, and her argument fails.

## CONCLUSION

Robinson's bankruptcy estate consisted of all bankruptcy assets that she possessed at the time of filing her bankruptcy and that she subsequently acquired up and until her bankruptcy was discharged. As a result, her estate included the above-styled claim against Tyson. However, Robinson did not amend her asset schedules in bankruptcy to reflect this asset. According to the Eleventh Circuit's pronouncements in *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282 (11th Cir. 2002) and its progeny, Robinson took inconsistent positions under oath in judicial proceedings that, if allowed, would make a mockery of the judiciary, and as a result, the principle of judicial estoppel prevents her from being able to assert her claim against Tyson. Consequently, Tyson's motion for summary judgment will be granted by separate order.

**DONE** this 31st day of July, 2008.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE